S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**KATHLEEN BICKERS, OSB #85151**
kathleen.bickers@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>           v.<br><br>**GONZALO VARGAS-TORRES,**<br><br>           **Defendant.** | Case No.  3:10-CR-00318-MO-3<br><br>**GOVERNMENT'S TRIAL<br>MEMORANDUM** |

The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Kathleen L. Bickers, Assistant United States Attorney, respectfully submits the following trial memorandum for the Court's consideration.

**I.      CASE STATUS**

     **A.      Trial Length and Status**

The government expects that the trial, which begins on Tuesday, March 12, 2013, will last three days.  No contested pretrial motions have been filed in this case to date. A pretrial conference is scheduled for Monday, March 11, 2013 at 10:00 a.m.

///

**Government's Trial Memorandum**                                                                                                    **Page 1**

**B.      Stipulations**

The parties have not yet reached stipulations to facts or the admissibility of exhibits.

**C.      Pretrial Motions**

No substantive pretrial motions were filed in this case.

**D.      Government Witnesses**

Herewith in a separate document, the government submits a list of witnesses. Pursuant to the court-ordered schedule, the government previously filed a list of two expert witnesses with a summary of their testimony. The government may be able to reduce the number of witnesses it will call depending on the stipulations reached with opposing counsel prior to trial.  Due to the complexity of the case, the government reserves the right to call additional witnesses not currently on the list as their relevance becomes necessary during trial.

Although the government is not required to provide Jencks material until after the witness testifies, the government will provide the defense counsel with copies of grand jury testimony one week prior to trial  for those witnesses who will be called by the government in its case in chief.

**E.      Government Exhibits**

The government submits herewith in a separate document a list of exhibits, and will provide to defense counsel notebooks containing copies and/or pictures of exhibits prior to trial.

**F.      Government's Requested Jury Instructions and Verdict Form**

The government submits herewith in separate documents proposed jury instructions and a proposed verdict form.

///

**Government's Trial Memorandum**                                                                                                **Page 2**

### G. Government's Requested Voir Dire

The government submits herewith in a separate document proposed questions for the voir dire of the jury.

### H. Defendants' Status

Defendant Gonzalo Vargas-Torres was arrested in Richland, Washington on November 10, 2010. He was arraigned and detained in federal custody pending trial.

### I. Co-Defendants' Status

Co-defendants Juan Diego Aguilar Vargas, Jose Arellano-Vargas, Gabriel Arellano-Vargas, Daniel Arellano-Vargas, Leonardo Vargas-Anguiano, Christina Crystal Ellinwood and Sashana Sunshine Dobos have all entered pleas of guilty to a Conspiracy to Manufacture Marijuana. Co-defendants Gabriel Arellano-Vargas and Daniel Arellano-Vargas have also pleaded guilty to a Conspiracy to Distribute Methamphetamine. Leonardo Vargas-Anguiano's testimony was perpetuated and recorded prior to his deportation from the United States to Mexico. The defendant's current counsel conducted a cross-examination of this witness.

Gabriel Arellano-Vargas and Juan Diego Aguilar Vargas are the only defendants who have pleadedguilty, but not yet sentenced. Both these defendants are expected to testify at the trial of the defendant. Gabriel Arellano-Vargas is in custody. The government will request the perpetuated testimony of Leonardo Vargas-Anguiano also be presented to the jury.

## II. THE THIRD SUPERSEDING INDICTMENT

The defendant is charged in the Third Superseding Indictment with Count 1 – conspiracy to manufacture marijuana, a quantity of more than one-thousand marijuana plants, and he is also

charged with the distribution of more than fifty grams of actual methamphetamine, all in violation of Title 21, United States Code, Sections 841(a)(1); 841(b)(1)(A)(vii) and 846.

A second conspiracy is charged in Count 2, alleging that the defendant knowingly and intentionally agreed with others to carry and use a firearm during and in relation to the drug trafficking crime set forth in Count 1, and for possessing a firearm or firearms in furtherance of the drug trafficking crime set forth in Count 1, in violation of Title 18, United States Code, Section 924(c)(1)(A).

The defendant is also charged in Count 12 with the substantive offense of manufacturing more than one-thousand marijuana plants.

## III.  FACTUAL BACKGROUND

This case arises out of the defendant's conspiracy to illegally cultivate large quantities of marijuana in two outdoor grow fields and to distribute multiple pounds of methamphetamine in Washington and Oregon.

### A.  Infiltration of Conspiracy by Government Informant

In 2009, local law enforcement agencies in Tillamook and Lincoln County began to receive information from an informant that several members of a family were involved in the distribution of methamphetamine and the cultivation of large outdoor marijuana grows in rural forested land. These local agencies teamed up with Special Agent David Poe of the Drug Enforcement Administration (DEA) to use the informant to infiltrate the inner workings of the conspiracy to uncover the grow operations and to track the source of the methamphetamine being brought into the affected coastal communities. In a series of controlled purchases of methamphetamine on seven different occasions from Daniel Arellano-Vargas between September 17, 2009 and

December 17, 2009, the investigators successfully used the informant to detect numerous conspirators in the Vargas Family.

Through surveillance and detailed information learned from the informant as he gained the trust of the familial conspirators, law enforcement determined that Gabriel Arellano-Vargas was supplying methamphetamine to his brother Daniel from other relatives located in the State of Washington including the defendant Gonzalo Vargas-Torres.

The investigation also revealed in early 2010 that the members of the Vargas family were scouting areas to grow marijuana in rural Yamhill and Polk Counties. They were also enlisting labor and resources for the grow operations. Gonzalo Vargas-Torres invested money into these grow operations and did some of the recruitment of labor while his brother Manuel Vargas-Torres provided much of the expertise necessary for the growing process. The conspirators requested that the government informant participate in the grow operations by purchasing a pump and by agreeing to transport food and workers to the grow sites. In exchange, the conspirators agreed to give the informant a portion of the profits after harvest.

Investigators continued to monitor the conspirator's activities through surveillance and the surreptitious recording of conspiratorial conversations conducted in furtherance of the conspiracy.

The informant's identity of the defendant Gonzalo Vargas-Torres a leading participant and financier was confirmed in a number of ways. To corroborate the informant's report that the defendant had assisted the growers in purchasing growing implements in April 2010, investigators requested that the Tukwila Lowe's Store provide a videotape of the defendant and other conspirators purchasing grow supplies, including garden implements and a backpack sprayer. This event occurred on a trip to Tukwila to the defendant's residence wherein the informant was

able to surreptitiously record with his cell phone a video of the defendant who the family generally only referred to as "Papa".  Gabriel Arellano-Vargas requested the informant accompany him on a trip to Papa's residence to pick up methamphetamine.  While at the residence, Papa showed Gabriel Arellano-Vargas and the informant approximately two pounds of methamphetamine.  Papa gave Gabriel Arellano-Vargas one-half pound of methamphetamine to take back to Oregon.

 It is anticipated that the informant's account of these events will be corroborated by the testimony of another conspirator who was present at this key event.

Members of the conspiracy will also be able to corroborate the informant's report that Gonzalo Vargas-Torres had provided a 9 millimeter handgun to another conspirator to carry and possess at the marijuana grow sites.  In 2010, the informant had gained the trust of the conspirators such that he was shown the area of two actual grow sites the conspiracy cultivated for their 2010 growing season.  Based on the informant's detailed description of the area, investigators found and began to monitor through cameras and other means the two grow sites which investigators referred to as the Gold Creek Grow and the Summit Grow.

As previously noted, the defendant was known among family members as "Papa".  The term is a family nickname used for him that in its Spanish pronunciation is associated with potato rather than the word for father.

In July 2010, investigators became concerned that the armed growers presented a risk to innocent residents located close to the Gold Creek garden located in rural Polk County. Investigators elected to raid and dismantle the Gold Creek site even though the investigation remained ongoing as to the larger methamphetamine conspiracy.  The investigators did not wish

to risk a violent encounter between the rural residents who might also be armed in the event they discovered the illegal activity near their land or had some other unfortunate encounter with the illicit growers.  On July 28, 2010, the Gold Creek grow site was searched and 3,735 rooted marijuana plants were pulled with a sample sent to the DEA crime laboratory for analysis.

   This raid of the Gold Creek site caused alarm among the conspirators, some of whom left Oregon after the Gold Creek grow raid.  The plants at the second grow site in Yamhill County called the Summit site began to fail.  Older members of the Vargas conspiracy recruited younger members to care for those plants.  The defendant Gonzalo Vargas-Torres personally recruited his sister's son Juan Diego Aguilar Vargas, a recent high school graduate to work at the Summit site in return for a share of the profits.  Eventually, plants at the Summit began to fail.  Some of the conspirators harvested seeds from the plants before abandoning the site in the fall.

   Law enforcement searched the Summit grow site on October 29, 2010, seizing over 360 live marijuana plants, and finding over 1000 dead stalks of plants.  The search then commenced for the conspirators to arrest them.  Some of them had fled to Washington.  The defendant was arrested on November 10, 2010, in a Motel 6 in Richland, Washington with his brother Manual.  The defendant was in possession of identification with his own picture on it but in the name of Roberto Ceballos Torres.  A Nissan Pathfinder registered in the same name was found at the motel.  A subsequent search of the defendant's criminal history revealed he was wanted out of Iowa for breaking a federal pretrial supervision anklet in order to flee a federal indictment for the defendant's delivery of two pounds of methamphetamine to an informant in 1997.  Back in Iowa, he was using another brother's name Moises Vargas Torres.  The defendant owns a house in Tillamook, Oregon in yet another brother's name.

**Government's Trial Memorandum**                                                                                        **Page 7**

## IV. LEGAL ISSUES

The government is simultaneously filing proposed jury instructions that are based largely on the Model Criminal Jury Instructions for the Ninth Circuit. These proposed instructions set for the elements of the charges against the defendant. Additional anticipated evidentiary issues are addressed below.

### A. Defendant's Statements and Admissions

It is well settled that a statement by a party may be offered against him or her as an admission, and is therefore non-hearsay. *United States v. Nixon,* 418 U.S. 683, 702, n. 13 (1974); *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) ("A defendant's own out-of-court admissions . . . surmount all objections based on the hearsay rule . . . and [are] admissible for whatever inferences the trial judge [can] reasonably draw"). Although the Government may offer a statement into evidence against a defendant as an admission, the defendant cannot offer his prior statements on his own behalf for proof of the truth of the matter asserted therein since these self-serving statements are hearsay. See United *States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay). Nor can defendants seek to introduce such hearsay statements through cross-examination of other witnesses. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

### B. Co-Conspirator Statements

The government will introduce statements made by co-conspirators during the life of the conspiracy. Federal Evidence Rule 801(d)(2)(E) provides:

A statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

### C. Firearms Conspiracy

Under *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946), a conspirator is criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Moreland*, 622 F.3d 1147, 1169 (9th Cir.2010) (quotations omitted). A defendant may be convicted under a Pinkerton theory of using or carrying a firearm in violation of section 924(c). *United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir.2005); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1203 (9th Cir.2000); *United States v. Winslow*, 962 F.2d 845, 853 n. 2 (9th Cir.1992). The *Pinkerton* rule holds "a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Long*, 301 F.3d 1095, 1103 (9th Cir.2002) (citing *Pinkerton*, 328 U.S. at 645-48, 66 S.Ct. 1180). The government is not required to establish actual knowledge of the gun; rather, [t]he touchstone is foreseeability. *United States v. Hoskins*, 282 F.3d 772, 776 (9th Cir.2002) (citation omitted).

### D. Evidence of Prior Methamphetamine Distribution

Soon after the defendant's arrest at a motel in Richland, Washington on November 10, 2010, for the subject marijuana and methamphetamine conspiracy, a fingerprint comparison revealed that the defendant was a federal fugitive on a federal indictment CR 97-4016DEO from the Northern District of Iowa for distribution of large quantities of methamphetamine during a video and audio taped meeting in a hotel room. In 1997, the defendant was released on that charge pending trial over the objection of the government and despite the fact the defendant was and is a citizen of Mexico. Pretrial Services had placed an ankle monitoring device on the

defendant. The defendant broke the device off his ankle and fled. Pieces of the device were found at his residence in Iowa by law enforcement officers.

The proffered acts in Iowa through the testimony of an Iowa case officer and a video tape in the hotel room where the methamphetamine transaction occurred are all admissible under Federal Rule of Evidence 404(b), which provides in pertinent part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..."

The defendant's flight from the Iowa prosecution should be admitted as additional evidence of his guilt in the distribution of methamphetamine in that prior case. "It is today universally conceded that the fact of an accused's flight … [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States* v. *Myers*, 550 F.2d  1036, 1049 (5th Cir. 1977).

The Ninth Circuit construes Rule 404(b) as a rule of inclusion and evidence of other crimes or acts is admissible thereunder except where it tends to prove only criminal disposition. *United States v. Ayers*, 924 F.2d 1468, 1472-1473 (9th Cir. 1991).   Evidence of prior bad acts is admissible under this rule if

>    (1) the evidence tends to prove a material element of the offense charged,
>
>    (2) the prior act is not too remote in time,
>
>    (3) the evidence is sufficient to support a finding that the defendant committed the other act, and

**Government's Trial Memorandum**                                                                                         **Page 10**

(4) in cases where knowledge and intent are at issue, the act is similar to the offense charged. *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004). The exceptions of knowledge, plan, motive, and opportunity are all closely related and it is unnecessary to specify the exception within which a particular item of evidence is admissible. *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981).

In admitting Rule 404(b) evidence, the district court is not required to make a preliminary finding that the government has proved the "other act" evidence by a preponderance of the evidence before submitting such evidence to the jury. *United States v. Plancarte-Alvarez*, 366 F.3d at 1062. Rather, the district court need only determine that there is sufficient evidence to support a finding by the jury that the defendant committed the similar act. Id. The district court must also analyze the proffered evidence pursuant to F.R.E. Rule 403 and determine whether its probative value outweighs its prejudicial effect. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

The Ninth Circuit, and its sister circuits, has addressed the type of evidence proffered by the United States and held this type of evidence to be admissible Rule 404(b) evidence. In *United States v. Johnson*, the defendant was charged and convicted of transportation of a minor for with intent to engage in criminal sexual conduct, in violation of Title 18, United States Code, section 2423(a). At trial, the United States sought to introduce evidence that the defendant had attempted to engage in sexual conduct with other minors thirteen years earlier. 132 F.3d 1279, 1281-82 (9th Cir. 1997). The Court addressed each of the factors to be considered in assessing proffered Rule 404(b) evidence. First, the Court found that the evidence of the defendant's past sexual conduct with minors demonstrated intent to engage in sexual conduct in the charged offense. Id. at 1282. Next, the Court held that the prior conduct - even with its factual

differences in commission - was sufficiently similar to the present charged crime. Id. at 1283. Third, the Court held that the evidence was supported by sufficient evidence. Id. Notably, even though the proffered evidence of the defendant's prior misconduct was to be proven by one witness, the Court held that "this reliability threshold is not a high one, and the testimony of one witness can be sufficient." Id. (noting the low threshold required for admissibility under Rule 404(b))

The Court found that "the witnesses' testimony concerning [the defendant's] sexual advances amounted to no more than unsubstantiated innuendo, and the trial judge properly concluded that the jury could reasonably find by a preponderance of the evidence that the prior acts had occurred." Id. Finally, the Court found that the passage of thirteen years did not negate the admissibility of the evidence. Id. ("this court has not yet identified a particular number of years after which past conduct becomes too remote"). After engaging in this analysis, the Ninth Circuit held that the prior "bad act" evidence was probative of intent and was properly admitted under Rule 404(b). See also *United States v. Saunders*, 641 F.2d 659, 665-66 (9th Cir. 1981) (evidence of prostitution after the charged prostitution activity and assaults on the prostitutes was admissible to show intent, plan, and absence of mistake or accident); *United States v. Curtis*, 481 F.3d 836, 838 (D. D.C. 2007) (in trial of defendant charged with sex trafficking of a minor in violation of 18 U.S.C. § 1591, evidence of prior prostitution of a minors was admissible under Rule 404(b) and should not be excluded under Rule 403); *United States v. Riley*, 657 F.2d 1377, 1388 (8th Cir. 1981) (evidence that the defendant, charged with transportation, had engaged in acts of prostitution after the charged conduct was admissible evidence under Rule 404(b)); *United States v. Drury*, 582 F.2d 1181 (8th Cir. 1978) (evidence that the defendant, charged with

a Mann Act violation, had solicited women for prostitution prior occasions, was admissible under Rule 404(b)).

The above cited case law regarding the admissibility of prior bad act evidence under Rule 404(b) in the context of sexual exploitation crimes is consistent with well-established law interpreting Rule 404(b) evidence in other contexts. In *United States v. Basinger*, 60 F.3d 1400, 1407-1408 (9th Cir. 1995), the Ninth Circuit upheld the admission of testimony relating to an uncharged traffic stop and arrest in California in a methamphetamine manufacturing case in Washington. The traffic stop resulted in the seizure of slightly more than one gram of methamphetamine, $10,440 cash, and a 90-pound drum of red phosphorus from the defendant's vehicle. The court held that evidence of the prior arrest was relevant to prove both knowledge and intent which are necessary elements of the offense charged. See also *United States v. Otis*, 127 F.3d 829, 834 (9th Cir. 1997) (evidence of prior drug conviction properly admitted to show familiarity with cocaine business and an inference of knowledge); *United States v. Jackson*, 84 F.3d 1154,1158-1159 (9th Cir. 1996)(evidence of a prior arrest and drug sales were relevant to proof of knowledge and opportunity and therefore admissible); *United States v. Jones*, 982 F.2d 380, 382-383 (9th Cir. 1992) (admitting regarding prior uncharged rug distribution to explain co-conspirator relationship and place the offense conduct in context); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1325-1327 (9th Cir. 1992) (prior false statement by defendant was probative of intent and properly admitted).

The role of the defendant in the distribution of multiple pounds of methamphetamine in Iowa in 1997, bears directly on his knowledge and intent to distribute multiple pounds of methamphetamine in 2010 in Oregon and Washington. The fact he broke a pretrial release electronic monitoring device to facilitate his flight from the federal indictment in Iowa

demonstrates evidence of his guilt for that crime. This conclusion is compounded by the fact that while a fugitive from a charge for selling methamphetamine, the defendant was once again found by law enforcement to be engaged in basically identical criminal conduct. In the subject case, two witnesses will testify that the defendant gave them a half a pound of methamphetamine to take back to Oregon.

The indictment alleges that the defendant knowingly distributed methamphetamine. The defendant could well claim or a jury could think that it is possible that the defendant did not know he was distributing methamphetamine or that the government has not proven that he knew that the substance he gave the men was methamphetamine. The defendant's prior act of distributing methamphetamine in 1997 would assist the trier of fact in determining whether the defendant knew when he handed over that crystalline substance in plastic packages to the men, that the two men would be taking it back to Oregon for further distribution. As the Ninth Circuit noted in *Basinger,* prior trafficking or manufacturing conduct with a particular drug is admissible to prove both knowledge and intent. Id. 1407-1408.

The second factor, whether the prior act is too remote in time, also supports admissibility. The proffered evidence occurred in a thirteen-year window that was previously considered acceptable by the Ninth Circuit. See *United States v. Johnson*, 132 F.3d 1279, 1281-82 (9th Cir. 1997). It is likely that the Ninth Circuit would agree in the subject case that the fact the defendant was literally still on the run from the first federal level methamphetamine investigation targeting him when he was arrested in the second federal methamphetamine investigation targeting makes the twelve year window between the two events seem even shorter in terms of evidentiary perspective and relevance.

The third factor to be considered - sufficiency of the evidence, also supports admission of the evidence here. The proffered evidence will be introduced through the direct testimony of a law enforcement witness who videotaped the delivery of methamphetamine into a hotel room. The defendant is depicted in this video recording handling the sample of methamphetamine delivered to the informant. The case officer who will testify about the events in 1997, Marti Reilly, is now Captain of the Uniformed Division in the Sioux City Police Department. Captain Reilly can efficiently detail for an Oregon jury the essential facts of the high level methamphetamine sale that the defendant did in his state back in 1997. The government does not anticipate that the showing of the videotape to the jury and the brief testimony of Captain Reilly will unduly lengthen the Oregon federal trial of the defendant. The government is mindful of the wisdom of judicial economy particularly with respect to other act evidence and has refrained from also calling the other Iowa case officer, David Drew who is now Sheriff of Woodbury County wherein the 1997 drug deal occurred.

Finally, with regard to the fourth factor - whether knowledge and intent are at issue and the act is similar to the offense charged, defendant's knowledge and intent here are central to the case and the proffered acts all involve conduct that is strikingly similar to the charged offense.

Further, although not required to allege which of the Rule 404(b) exceptions the proffered evidence falls within, see *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981), the government submits that the proffered evidence falls squarely within the exceptions recognized in Rule 404(b) - "intent, preparation, plan, knowledge, . . . or absence of mistake or accident." That the defendant had previously distributed large quantities of methamphetamine bears directly on, *inter alia*, his intent to distribute the controlled substance and his knowledge of the methamphetamine distribution business.

**Government's Trial Memorandum** **Page 15**

Finally, the proffered evidence should not be excluded under Federal Rule of Evidence 403 insofar as its probative value is not substantially outweighed by prejudice. Any prejudice that may arise can be ameliorated by a limiting instruction by this Court.

DATED this 4th day of March 2013.

>Respectfully submitted,
>
>S. AMANDA MARSHALL
>United States Attorney
>
>*/s/ Kathleen Bickers*
>KATHLEEN BICKERS
>Assistant United States Attorney

.